UNITED STATES of America,
Appellee,

v.

Charles Quinn MILLER and Carl Joseph
O'Connor, Appellants.

No. 12590.

United States Court of Appeals
Fourth Circuit.

Argued Dec. 6, 1968.

Decided Feb. 14, 1969.

Edward L. Murrelle and Luke Wright, Greensboro, N. C. (Jordan, Wright, Nichols, Caffrey & Hill, Greensboro, N. C., on brief), for appellants.

William H. Murdock, U. S. Atty. (H. Marshall Simpson, Asst. U. S. Atty., on brief), for appellee.

Before SOBELOFF, BRYAN and CRAVEN, Circuit Judges.

**1102**

SOBELOFF, Circuit Judge:

■ Charles Quinn Miller and Carl Joseph O'Connor appeal from the District Court's denial of a motion for leave to withdraw their guilty pleas pursuant to Rules 32(d)[1] and 35[2] of the Federal Rules of Criminal Procedure. The motions were made after the defendants had been sentenced for violations of the National Firearms Act, 26 U.S.C. §§ 5814(a) and 5841,[3] which proscribe the transfer or possession of firearms as defined in 26 U.S.C. § 5848(1) unless certain official forms have been completed and submitted to the Government.

The defendants were sentenced on December 4, 1967, and took no appeal at that time. On January 29, 1968, the Supreme Court decided the case of Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L. Ed.2d 923 (1968), which held that a properly pleaded claim of the privilege against self-incrimination bars prosecution under 26 U.S.C. §§ 5841 and 5851, involving possession of unregistered firearms. The defendants promptly moved to withdraw their pleas of guilty in order to plead the privilege against self-incrimination in response to the charges of the indictment. When the District Court denied the motion, this appeal followed.

■ The appellants argue that under *Haynes* the Fifth Amendment bars prosecution under both § 5814(a) and § 5841, although the Supreme Court's opinion dealt specifically only with the latter, which penalizes unregistered possession. They contend that since their counsel were not aware that *Haynes* was pending in the Supreme Court when they advised the appellants to enter guilty pleas, and since that decision followed so closely upon the appellants' conviction, it would constitute "manifest injustice" under Rule 32(d) to refuse to allow them to withdraw the pleas of guilty. We agree with the defendants that they should have the opportunity to plead the privilege against self-incrimination as *Haynes* provides, and we therefore reverse the District Court's denial of the motion. In doing so, however, we must consider at some length those aspects of the case on which the Government relies in arguing that *Haynes* is not applicable to this appeal.

I

■ Since the appellants' convictions became final before the Supreme Court decided *Haynes*, their reliance on that decision rests on the premise that *Haynes* has retroactive effect. In denying the appellants' motion, the District Court took the view that *Haynes* should be limited to prospective application. The relevant criteria for resolving the question of whether a new constitutional rule is to be applied retroactively or only prospectively have been set forth by the Supreme Court in Stovall v. Denno, 388 U.S. 293,

1. Rule 32(d) reads:
   A motion to withdraw a plea of guilty or of *nolo contendere* may be made only. before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

2. Rule 35 reads:
   The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence. The court may reduce a sentence within 120 days after the sentence is imposed * * *.

The defendants' motion was timely under Rule 35.

3. Section 5814(a) reads in part:
   It shall be unlawful for any person to transfer a firearm except in pursuance of a written order from the person seeking to obtain such article, on an application form issued in blank in duplicate for that purpose by the Secretary or his delegate.
   Section 5841 reads in part:
   Every person possessing a firearm shall register, with the Secretary or his delegate, the number or other mark identifying such firearm, together with his name, address, place where such firearm is usually kept, and place of business or employment * * *.

297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967):

> (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.

Assessing the *Haynes* decision in terms of these criteria, we conclude that the new rule is an appropriate one for retroactive application.[4]

In *Haynes,* the Supreme Court held that prosecution under certain sections of the National Firearms Act is inconsistent with the Fifth Amendment because the defendant is in essence charged with failure to file an incriminatory registration form. The purpose of the new rule

> is to be found in the whole complex of values that the privilege against self-incrimination itself represents, values * * * reflecting "recognition that the American system of criminal prosecution is accusatorial, not inquisitorial, and that the Fifth Amendment privilege is its essential mainstay." Tehan v. United States ex rel. Shott, 382 U.S. 406, 414, 86 S.Ct. 459, 464, 15 L.Ed. 2d 453 (1966).

The question therefore is whether these values would be furthered by applying the *Haynes* rule retroactively.

The Court, in determining which new constitutional rules should be retroactive, has indicated that retroactivity is most appropriate for those new principles which affect "the fairness of the trial—the very integrity of the fact-finding process." Linkletter v. Walker, 381 U.S. 618, 639, 85 S.Ct. 1731, 1743, 14 L.Ed.2d 601 (1965). Under this test, the Court has denied retroactivity to certain holdings dealing with the Fifth Amendment privilege against self-incrimination, since it

> [does] not relate to protecting the innocent from conviction but rather to preserving the integrity of a judicial system in which even the guilty are not to be convicted unless the prosecution "shoulder the entire load." Tehan v. Shott, *supra* at 415, 86 S.Ct. 459 at 465.

Both Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), which forbade comment by the prosecution on an accused's failure to testify at trial, and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which set standards for police custodial interrogation, were accorded only prospective effect by the Court. Tehan v. Shott, *supra;* Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). These Fifth Amendment decisions would seem to suggest that *Haynes,* like *Griffin* and *Miranda,* might be applied prospectively only.

■ Significantly, however, the Court has also stated that "the retroactivity or nonretroactivity of a rule is not automatically determined by the provisions of the Constitution on which the dictate is based." Johnson v. New Jersey, *supra* at 728, 86 S.Ct. 1772 at 1778. The impact of the *Haynes* decision is so fundamentally different that earlier Fifth Amendment cases do not govern this case; retroactive application seems clearly appropriate here.

The Court's emphasis in its retroactivity decisions on the importance of reliable fact-finding procedures is simply one frequently articulated aspect of its concern that all convictions, past and present, shall be the product of fundamentally fair proceedings. Thus, in denying

---

4. The Supreme Court has not explicitly given *Haynes* retroactive application. However, it is noteworthy that on March 4, 1968, the Court, on a petition for rehearing, granted certiorari in Forgett v. United States, 390 U.S. 203, 88 S.Ct. 898, 19 L.Ed.2d 1033 (1968), vacated the judgment, and remanded the case for "further consideration in the light of Haynes v. United States." In doing so, the Court vacated its own prior order of February 28, 1966, denying certiorari. *Haynes* was thus applied to a conviction which had become final with the denial of certiorari in 1966.

retroactivity to *Griffin* and *Miranda,* the Court carefully outlined the "other safeguards" of fairness available to those defendants who were denied the benefits of the new rules. With regard to *Griffin,* the Court noted that even the states which permit comment by the prosecution on failure to testify

> respected these basic purposes [of the Fifth Amendment] by extending the protection of the testimonial privilege against self-incrimination to every defendant tried in their criminal courts. Tehan v. Shott, *supra* at 415, 86 S.Ct. 459 at 465.

Similarly the Court pointed out that a defendant excluded from the protection of *Miranda* could still rely on the "increasingly meticulous" test of voluntariness in challenging the use at trial of incriminating statements made in police custody. Johnson v. New Jersey, *supra* at 730, 86 S.Ct. 1772; Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966). The Court therefore reasoned that, on balance, retroactive application of these rulings would not be warranted. It considered, on the one hand, the extremely disruptive effect if new trials were awarded to the thousands of state prisoners potentially affected by the new rulings, and, on the other hand, the small likelihood of a different result on retrial in most cases because of already existing safeguards.[5] The clear intimation is that a new rule *should* be applied retroactively where the persons possibly affected by it are few in number and where applying the rule would lead to a different result on retrial in most cases.

In the *Haynes* situation, a different result on retrial would be compelled in almost every case, for any prosecution would be barred by the defendant's claim of the privilege against self-incrimination. An existing conviction is itself the proof of an unconstitutional prosecution, for unlike *Miranda* or *Griffin,* which affect only single aspects of the process which led to conviction, the *Haynes* ruling focuses upon the very offense with which the defendant is charged. Given the virtual impossibility of a lawful conviction in any new trial, it is difficult to perceive how it could reasonably be concluded that past convictions were basically fair or without prejudice to the accused.

The reliability of fact-finding as a criterion for determining retroactivity becomes irrelevant when no facts that conceivably could be found would escape condemnation as violative of a fundamental constitutional right. Prosecution or conviction for failure to file the incriminatory form demanded by the statute could be sustained only in blatant disregard of the Fifth Amendment privilege.

We turn to the second criterion specified by the Court—the extent and justifiability of prior reliance by law enforcement agencies on old standards in seeking convictions. Reliance is not a convincing reason for denying retroactivity in the *Haynes* situation. Unlike *Miranda,* which subjected to challenge all past convictions, state and federal—a formidable prospect—*Haynes* has no effect at all on state law enforcement. Moreover, even federal reliance should carry less weight because of prior lower court decisions foreshadowing the result in *Haynes.* See discussion in Roberts v. Russell, 392 U.S. 293, 295, 88 S.Ct. 1921,

---

5. The Court pointed out, in reference to *Miranda,* that the voluntariness test now takes specific account of the failure to advise the accused of his privilege against self-incrimination or to allow him access to outside assistance. *See* Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959). Johnson v. New Jersey, *supra* at 730, 86 S.Ct. 1772, 1779.

Moreover, traditional safeguards are available not only at trial but also on collateral attack:

> Thus while *Escobedo* and *Miranda* provide important new safeguards against the use of unreliable statements at trial, the non-retroactivity of these decisions will not preclude persons whose trials have already been completed from invoking the same safeguards as part of an involuntariness claim. *Id.*

20 L.Ed.2d 1100 (1968). *Haynes* did not represent a radical innovation in constitutional adjudication. To the contrary, courts of appeals in four separate circuits anticipated the Supreme Court in holding various sections of the National Firearms Act inconsistent with the Fifth Amendment.[6]

In addition, the Supreme Court's decision in Albertson v. Subversive Activities Control Board, 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965), which the Court relied on in *Haynes,* strongly implied that the registration requirements of the National Firearms Act were constitutionally vulnerable. In *Albertson* the Court held that the registration requirements of the Subversive Activities Control Act of 1950 could not be enforced against Communist Party members without violating the Fifth Amendment, for that Act, like the National Firearms Act, was "directed at a highly selective group inherently suspect of criminal activities." 382 U.S. at 79, 86 S.Ct. 194, at 199.

The extent of reliance is closely related to the third criterion mentioned by the Court—the impact of retroactivity on the administration of justice. The foregoing discussion indicates that this impact would not be great. Issac v. United States, 293 F.Supp. 1096 (D.S.C.1968). Unlike new constitutional rules which could affect a great volume of past criminal convictions in all jurisdictions, the *Haynes* rule affects only federal convictions and involves a limited number of offenses. The delicate problem of federal intrusion into the states' administration of their criminal laws does not arise here. The federal government's tenuous interest in the continued imprisonment of defendants convicted under a statute inherently at war with a basic constitutional right should not stand in the way of retroactive application of the *Haynes* rule.

## II

At no time before entering their guilty pleas did the appellants raise the Fifth Amendment as a bar to their prosecution under §§ 5814(a) and 5841, nor did they appeal the judgments of conviction based on those pleas. The Government therefore contends that they have waived the right to assert the Fifth Amendment privilege. The District Court, however, held that mere failure to assert the privilege in the original proceedings, before *Haynes* was decided, could not constitute "an intentional relinquishment of a known right or privilege." See Grosso v. United States, 390 U.S. 62, 70–71, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); Greenwood v. United States, 392 F.2d 558 (4th Cir. 1968). Here, as in *Grosso* and *Greenwood,* there is no evidence to support a finding of waiver other than simple failure to claim the privilege. Such negative evidence is not enough.

It has been pointed out that "courts indulge every reasonable presumption against waiver" of fundamental constitutional rights and that we "do not presume acquiescence in the loss of fundamental rights." Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

In agreement with the District Court, we find no waiver here and conclude that the defendants' post-conviction motion constitutes a "proper assertion" of the Fifth Amendment privilege, as required by *Haynes.*

## III

The Government argues that under *Haynes* a claim of the privilege against self-incrimination bars only conviction for unregistered possession under § 5841 and that the defendants' sentences may be supportable because they

---

6.  Deckard v. United States, 381 F.2d 77 (8th Cir. 1967); Lovelace v. United States, 357 F.2d 306 (5th Cir. 1966); Dugan v. United States, 341 F.2d 85 (7th Cir. 1965); Russell v. United States, 306 F.2d 402 (9th Cir. 1962). *See also* United States v. Fleish, 227 F.Supp. 967 (E.D.Mich.1964); McCann v. United States, 217 F.Supp. 751 (D.Colo. 1968).

were also convicted of transferring firearms in violation of § 5814(a). Given the reasoning of *Haynes*, however, we perceive no distinction of constitutional scope between the two sections and are persuaded that the Fifth Amendment forbids prosecution under § 5814(a) as well as under § 5841. See DePugh v. United States, 401 F.2d 346 (8th Cir. 1968); United States v. Thompson, 292 F.Supp. 757 (D.Del.1968); cf. United States v. Stevens, 286 F.Supp. 532 (D. Minn.1968).

Section 5814(a) reads:

It shall be unlawful for any person to transfer a firearm except in pursuance of a written order from the person seeking to obtain such article, on an application form issued in blank in duplicate for that purpose by the Secretary or his delegate.

The question is whether satisfaction of the obligation imposed by § 5814(a) would compel the defendant to incriminate himself. To obtain the written order required by the statute, the transferee and transferor must fill out Internal Revenue Service Form 4 (Firearms). The form requires the transferor to give a full description of the firearm, state his name and address, and indicate whether he is the owner of the firearm to be transferred. The form is thus similar to that required for registration of a firearm under § 5841. See Haynes v. United States, 390 U.S. 85, 96, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968).

The *Haynes* opinion describes in detail the ramifications of the National Firearms Act. Because of the variety of interlocking criminal offenses created by the Act, it is evident that a prospective transferor under § 5814(a) "realistically can expect that [submitting the application] will substantially increase the likelihood of his prosecution." Haynes v. United States, *supra* at 97, 88 S.Ct. 722, at 730. Just as registration under § 5841 "will facilitate prosecution under the making and transfer clauses of § 5851," application under § 5814(a) provides the Government with the information necessary for prosecution under the

possession and making clauses of §§ 5821, 5841 and 5851. It is true that situations may be hypothesized in which a potential transferor would not be subject to prosecution under other sections of the Act; he might, for example, not yet possess the firearm to be transferred. The Court in *Haynes*, however, dismissed a similar argument, stating that the correlation between obligation to register and potential violations was "exceedingly high." The possibility of uncommon situations arising in which compliance with the statutes would not be self-incriminatory does not prevent the dangers of incrimination created by § 5814(a), like those created by § 5841, from being "real and appreciable." 390 U.S. at 97, 88 S.Ct. 722.

The District Court's denial of the motion to withdraw the guilty pleas is reversed, and the case is remanded with directions to grant the motion and permit the assertion of the privilege.

Reversed and remanded.