**Dale MILLER, Petitioner,**

v.

**UNITED STATES of America,
Respondent.**

**No. C 69–666.**

United States District Court,
N. D. Ohio, E. D.

April 13, 1970.

Gordon Friedman, Cleveland, Ohio, for petitioner.

Edward S. Molnar, Asst. U. S. Atty., Cleveland, Ohio, for the United States.

## MEMORANDUM OPINION

BATTISTI, Chief Judge.

On March 9, 1970, this Court granted petitioner's motion pursuant to 28 U.S.C., § 2255 to vacate his conviction and sentence under 26 U.S.C., § 4744(a), the Marijuana Tax Act, and to withdraw his plea of guilty, and ordered him released from federal custody. Herein are the findings of fact and conclusions of law upon which the Court determined to grant said relief.

Petitioner, Dale Miller, was arrested on February 15, 1967, for an alleged violation of 26 U.S.C., § 4744(a), which states that:

"It shall be unlawful for any person who is a transferee required to pay the transfer tax imposed by Section 4741(a)—

(1) To acquire or otherwise obtain any marijuana without having paid such tax, or

(2) To transport or conceal, or in any manner facilitate the transportation or concealment of, any marijuana so acquired or obtained."

Miller was charged with having in his possession 105 grams of marijuana on September 19, 1966, according to the information filed against him in CR 68–421.

Petitioner was arraigned on November 21, 1968, and entered a plea of guilty to the information. This Court imposed sentence of five years on February 4, 1969. Since that time, petitioner has been incarcerated in the United States Penitentiary at Terre Haute, Indiana.

In August of 1969, Miller moved to vacate his plea of guilty and set aside his conviction and sentence, pursuant to 28 U.S.C. § 2255. Petitioner contended that his conviction could not stand in view of the decision of May 19, 1969, in Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57, in which the United States Supreme Court held that the Fifth Amendment privilege against self-incrimination was a complete defense to prosecution under the Marijuana Tax Act. Believing that petitioner had raised a significant issue with respect to a possible violation of his privilege against self-incrimination,

this Court on December 5, 1969, ordered the United States Attorney to show cause why an order should not issue granting relief to petitioner. Following consideration of respondent's brief, the Court was still of the opinion that petitioner's contentions were not without merit. Pursuant to 28 U.S.C. § 2243, the Court ordered the United States Attorney to prepare a writ of habeas corpus ad testificandum to produce petitioner at an oral hearing. The hearing was held on March 6, 1970. After pondering the law in this area, and with serious consideration directed to petitioner's prior record and apparent moral character, the Court on March 9 decided to grant petitioner relief without further delay.

## I. BACKGROUND AND LEGAL ISSUES

In Leary v. United States, 395 U.S. 6; 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), the United States Supreme Court accepted petitioner's contention that compliance with the Marijuana Tax Act compelled him "to expose himself to a 'real and appreciable' risk of self-incrimination, within the meaning of our decisions in Marchetti, Grosso, and Haynes." Id. at p. 16, 89 S.Ct. at p. 1537. The Court examined the statutory scheme surrounding 26 U.S.C. § 4744(a) and found that:

> "At the time petitioner acquired marihuana he was confronted with a statute which on its face permitted him to acquire the drug legally, provided he paid the $100 per ounce transfer tax and gave incriminating information, and simultaneously with a system of regulations which, according to the Government, prohibited him from acquiring marihuana under any conditions." Id. at page 26, 89 S.Ct. at page 1542.

With regard to transferees, 26 U.S.C., § 4741 imposed a tax "upon all transfers of marijuana." Section 4753 provides that at the time of paying the tax the taxpayer must register with the Internal Revenue Service. The transfer tax is $1.00 per ounce to transferees registered under Section 4753, while the tax is $100 per ounce to transferees not so registered. Further, Section 4773 provides that Internal Revenue Service registration forms shall be open to inspection by state and local officials charged with enforcement of marijuana laws. Section 4744(a) makes it unlawful to acquire marijuana without paying the Section 4741 transfer tax. If petitioner had sought to comply with Section 4741, i. e., go in and fill out a form and pay the tax, he would have had to identify himself as a transferee who had not registered and paid the tax. If he communicated the fact that he was a recent, unregistered transferee of marijuana, this would provide "evidence tending to establish his guilt under the state marijuana laws then in effect." Id. at p. 16, 89 S.Ct. at p. 1537, citing Marchetti v. United States, 390 U.S. 39, 48, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968). Therefore, "Literal and full compliance with all the statutory requirements would have entailed a very substantial risk of self-incrimination." Id. at p. 26, 89 S.Ct. at p. 1543, citing Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968). See also Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968). The Court concluded that "a timely and proper assertion of the privilege" against self-incrimination "should have provided a complete defense to prosecution under Section 4744(a) (2)." Id. at p. 27, 89 S.Ct. at 1543.

In the instant case, petitioner was arraigned and pleaded guilty to violating the Marijuana Tax Act in November of 1968, six months before Leary v. United States, *supra,* was decided by the Supreme Court. The Court is faced by petitioner's motion with the question of whether or not to vacate petitioner's plea of guilty and allow him to plead his privilege against self-incrimination, in view of Leary v. United States, *supra.*

There are three issues inherent in deciding that question:

(1) Whether petitioner's motion is timely.

(2) Whether petitioner has waived his right against self-incrimination by virtue of his guilty plea.

(3) Should the decision in Leary v. United States, *supra*, be applied retroactively?

## A. Petitioner's motion is timely.

In Leary v. United States, *supra*, the Supreme Court said that "a timely and proper assertion of the privilege" is a complete defense to prosecution under 26 U.S.C., § 4744(a). However, the Court did not specify what standard to apply for "timeliness." In that case, Leary did not assert the privilege as a defense until his motion for a new trial. The Court stated that:

"Although it would have been preferable for petitioner to have asserted the privilege at trial, we hold that in the circumstances of this case his failure to raise the issue at that time did not amount to a waiver of the privilege." *Id.* at pp. 27–28, 89 S.Ct. at p. 1543. See Grosso v. United States, 390 U.S. 62, 70, 71, 88 S.Ct. 709, 19 L.Ed.2d 906.

The suggestion can be drawn from this that the Supreme Court expects that determinations as to timeliness should not be rigidly interpreted.

The defendants in United States v. Miller, 4 Cir., 406 F.2d 1100 (1969) pleaded guilty to violation of the National Firearms Act. Afterwards they moved to withdraw their guilty pleas pursuant to Rules 32(d) and 35 of the Federal Rules of Criminal Procedure. Rule 32(d) states that:

"A motion to withdraw a plea of guilty * * * may be made only before sentence is imposed * * * but to correct *manifest injustice* the Court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea." (Emphasis supplied.)

Defendants in United States v. Miller, *supra*, argued that they were unaware that Haynes v. United States, *supra*, was pending in the Supreme Court when they pleaded guilty. In *Haynes*, the Supreme Court held that a properly pleaded claim of the privilege against self-incrimination bars prosecution under the National Firearms Act. Since *Haynes* was decided shortly after their sentencing, it would be a "manifest injustice" to refuse to allow them to withdraw their guilty pleas. The Fourth Circuit Court of Appeals agreed and granted defendants' motion to withdraw the plea and to exercise their right against self-incrimination.

The Fourth Circuit case is directly analogous to the situation petitioner Miller found himself in. Here petitioner's arraignment, plea and sentencing occurred before the *Leary* case had been decided. Similarly, Leary's trial occurred before the decisions in *Marchetti*, *Grosso*, and *Haynes* were handed down. The Supreme Court must have been swayed by this circumstance in *Leary* when it held his assertion of the privilege to be timely.

Other principles of fairness can be called forth to support the suggestion against rigid determination of timeliness. Petitioner could not timely exercise a right the existence of which he had no knowledge. It is unreasonable to require a defendant to anticipate favorable Supreme Court rulings. Nor should defendants be "compelled to make the futile gesture of raising the privilege at trial to preserve their rights in the event of an overriding decision." United States v. Manfredonia, 2 Cir., 391 F.2d 229, 230 (1968). In the present case, petitioner Miller tried to assert his privilege as soon as he became aware of its existence with regard to the Marijuana Tax Act, shortly after the rendering of the *Leary* decision.

In the absence of a definition of timeliness in *Leary*, numerous courts have reached conflicting conclusions on the issue. Cases which held contrary to United States v. Miller, *supra*, include Eby v. United States, 415 F.2d 319 (10th Cir. 1969) and Sepulveda v. United States, 415 F.2d 321 (10th Cir. 1969). In both of these cases, United States v. Miller, *supra*, was considered and expressly not followed. In both cases, the Court refers to the long period of time between petitioner's trial and post conviction proceedings. This Court finds itself lining up with the considerations expressed by the Fourth Circuit in United States v. Miller, *supra*. For other cases advancing this view, see Deckard v. United States, 381 F.2d 77 (8th Cir. 1967); Drennon v. United States, 393 F.2d 342 (8th Cir. 1968); and United States v. Scardino, 414 F.2d 925 (5th Cir. 1969). In these circumstances and in view of the suggestion in *Leary*, the Court finds that the motion is not untimely and may be heard.

*B. The petitioner did not waive his privilege against self-incrimination by virtue of his plea of guilty.*

■■ Many of the principles applicable to waiver of a constitutional privilege were mentioned in the above discussion of timeliness. It need only be re-emphasized that fairness dictates that a defendant ought not to be said to waive a privilege as to which he has no knowledge of its existence. The Supreme Court has held that in order for a person to plead guilty and waive his fundamental constitutional rights, he must do so "knowingly and intelligently." Carnley v. Cochran, 369 U.S. 506, 512, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Courts are to indulge in every reasonable presumption against waiver of a fundamental constitutional right. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 146 (1938). It is axiomatic that the Fifth Amendment privilege against self-incrimination is a fundamental constitu-

tional right. See Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). Rule 11 of the Federal Rules of Criminal Procedure requires that a plea be made voluntarily "with understanding of the nature of the charge and the consequences of the plea."

■ Applying these principles, the Court finds that petitioner Miller could not have knowingly and intelligently waived his privilege against self-incrimination when he entered his plea of guilty, plainly by virtue of the fact that he did not have sufficient reason to know of the existence of the right. United States v. Miller, *supra*; United States v. Lucia, 5 Cir., 416 F.2d 920 (1969); Boykin v. Alabama, *supra*. Analogously to the *Leary* decision, petitioner's failure to assert the privilege at his original trial (or arraignment) will not be held to constitute a waiver of the privilege. The Court, therefore, will permit assertion of the privilege at this time.

*C. Leary may be applied retroactively.*

To date, the Supreme Court has not ruled on the question of whether its decision in Leary v. United States, *supra*, is to have retroactive application. The district court, in this circumstance, is faced with the responsibility of making that determination using the principles applicable to retroactivity in criminal cases and with due consideration to precedent in analogous controversies. The Court has found particularly helpful the opinions of higher courts in cases dealing with the retroactivity of *Marchetti*, *Grosso*, and *Haynes*.

■ The considerations which affect the determination whether or not a newly articulated constitutional rule should be applied retroactively are set forth in Stovall v. Denno, 388 U.S. 293 at 297, 87 S.Ct. 1967 at 1970, 18 L.Ed.2d 1199 (1967):

"The criteria guiding resolution of the question implicates (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old stand-

ards, and (c) the effect on the administration of justice of a retroactive application of the new standards."

The Court has examined these criteria in the present context, using the definitions of these concepts as have evolved in related areas of the law.

Turning to the first of these criteria, the purpose of the ruling in *Leary* appears to be to protect the constitutional privilege against self-incrimination from a statutory scheme which jeopardizes it. The Supreme Court established a complete defense to prosecution under 26 U.S.C., § 4744(a). The Act is not declared unconstitutional and void, but it is rendered unenforceable. The net effect is to prohibit the government from prosecuting under the statute.

■ This purpose is distinct from that found in such cases as Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); and Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), for example, where the purpose can be seen to be the deterrence of unlawful conduct by the police. Such decisions are given prospective effect only, because deterrence would not be advanced by making them retroactive. Linkletter v. Walker, 381 U.S. 618, 637, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). However, retroactive application is most appropriate when rulings announce new standards which affect "the fairness of the trial—the very integrity of the fact-finding process." *Id.* at p. 639, 85 S.Ct. at p. 1743. The preservation of the privilege against self-incrimination is a critical factor in the fairness of trials.

In determining the extent of reliance by law enforcement authorities on the old standards, it should be noted that only federal law enforcement agencies will be affected. The states continue to have valid and enforceable marijuana legislation. State law enforcement is entirely unaffected by the ruling.

Retroactive application would not have any significant impact on the administration of justice. The United States Attorney conceded that the volume of past criminal convictions under the Marijuana Tax Act is small. The state courts handle the vast majority of marijuana prosecutions. To allow retroactive application of *Leary* will not open the floodgates of the federal penitentiaries.

In United States v. Miller, *supra,* the Fourth Circuit Court of Appeals ruled that the decision in Haynes v. United States, *supra,* should be applied retroactively. The Court reasoned that retroactivity should be applied where the number of persons affected by it are few and where application would lead to a different result on retrial in most cases. *Id.* 406 F.2d at p. 1104. Such is the circumstance and prospect herein. "A different result on retrial would be compelled in almost every case" under the Marijuana Tax Act, "for any prosecution would be barred by the defendant's claim of the privilege against self-incrimination." *Id.* 406 F.2d at p. 1104. The Court also noted that the *Haynes* rule affects only federal convictions and involves a limited number of offenses. *Id.* 406 F.2d at p. 1105.

In United States v. Lucia, *supra,* the Fifth Circuit Court of Appeals ruled that the decisions in *Marchetti* and *Grosso* should be applied retroactively. The Court reasoned that in line with Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), rules which substantially reduce the likelihood that an innocent person will be convicted should have retroactive application. Conceding that the prosecution probably relied heavily on the state of the law prior to *Marchetti* and *Grosso,* the Court still found in the purpose of those rulings an overriding consideration. The preservation of the privilege against self-incrimiantion is, on balancing the factors in Stovall v. Denno, *supra,* "more important than the fact that the government relied on earlier—now overruled—decisions." *Id.* 416 F.2d at p. 925. Finally, the Court noted that the effect on the administration of justice would be small, as there

are few persons convicted under these laws.

In the Sixth Circuit, the Court of Appeals in Graham v. United States, 407 F.2d 1313 (1969) declined to give retroactive application to the decisions in *Marchetti* and *Grosso*. That holding is not binding on the district court, with regard to the retroactivity of *Leary*. And the district court finds little reasoning in *Graham* to suggest that the Court of Appeals intended a general policy of broad application.

■ The Court is also mindful that other districts have held that *Leary* should not be applied retroactively. The district court for the Central District of California so held, apparently on findings opposite to those on which this Court relies. The Court held the motion untimely; the petitioner had moved two years after his conviction and sentencing. That court also believed that retroactive application would put great stress on the administration of justice. Jones v. United States, D.C., 305 F.Supp. 465 (1969). The considerations with regard to fundamental fairness, which are particularly compelling to this Court, are not present in the opinion of the California court. For these reasons, this Court chooses not to adopt the conclusion of that court. This Court is unaware, at the date of its ruling, that the Court of Appeals of any circuit has ruled on the retroactivity of *Leary*.

Seeing itself marching into unmarked field, this Court renders its opinion that the Supreme Court's holding in *Leary* should be applied retroactively. Such application fits logically with the criteria for determining retroactive application established in Stovall v. Denno, *supra*, and comports with the Court's obligation to avoid manifest injustice. The Supreme Court has rendered a statute unenforceable because it violates the constitutional privilege against self-incrimination. Fundamental fairness suggests that a man should not remain in prison convicted under an unenforceable statute. Accordingly, the Court

orders petitioner's plea of guilty withdrawn and accepts his assertion of the privilege against self-incrimination. As asserted, he cannot be convicted under the Marijuana Tax Act. His sentence and conviction are vacated, and he is ordered released from custody.