**UNITED STATES of America**
v.
**Ali HOUSSEIN.**
**Crim. No. 27315.**

United States District Court,
D. Maryland.
April 22, 1971.

George Beall, U. S. Atty., and Charles G. Bernstein, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

H. Thomas Howell, Baltimore, Md., and James J. Orlow, Philadelphia, Pa., for defendant.

WATKINS, District Judge.

Defendant, Ali Ahmad Houssein, has served a two year sentence under a judgment of conviction by this court after a guilty plea to the second count of a six count indictment. The second count charged defendant as being a transferee of marihuana in violation of Title 26, U.S.C. section 4744(a) without having paid the tax imposed by Title 26, U.S.C. section 4741(a). Represented by counsel, Houssein now moves this court to set aside his judgment of conviction and to permit him to withdraw his plea under Rule 32(d) of the Federal Rules of Criminal Procedure or, in the alternative, moves for a writ of error *coram nobis*.

The facts are not in dispute. At the commencement of his trial on September 13, 1966, before the undersigned judge, defendant entered a plea of not guilty to all six counts of the indictment. The next day, September 14, 1966, the plea to the second count was changed to guilty and was accepted by this court. On April 7, 1967, Houssein was sentenced to two years of imprisonment and a motion of *nolle prosequi* was granted as to the remaining five counts. No appeal was taken and defendant served his sentence. Upon completion of the sentence, defendant was ordered by the Immigration and Naturalization Service to report for deportation to his native land, Yemen, pursuant to the mandatory provisions of Title 8 U.S.C. section 1251 (a) (11):

§ 1251. Deportable aliens—General classes

(a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—

\* \* \*

(11) is, or hereafter at any time after entry has been, a narcotic drug addict, or who at any time has been convicted of a violation of, or a conspiracy to violate, any law or regulation relating to the illicit possession of or traffic in narcotic drugs or marihuana, or who has been convicted of a violation of, or a conspiracy to violate, any law or regulation governing or controlling the taxing, manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, exportation, or the possession for the purpose of the manufacture, production, compounding,

transportation, sale, exchange, dispensing, giving away, importation, or exportation of opium, coca leaves, heroin, marihuana, any salt derivative or preparation of opium or coca leaves or isonipecaine or any addiction-forming or addiction-sustaining opiate * * *.

■ Although Houssein's sentence has been fully served, the possibility of collateral consequences stemming from his conviction has become a certainty. Therefore, under Sibron v. New York, 392 U.S. 40, 50–58, 88 S.Ct. 1889, 20 L. Ed.2d 917 (1968), this court has jurisdiction.

Defendant predicates his motion upon the decision of the Supreme Court in Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), decided May 19, 1969, more than two years after defendant's sentencing. In Leary and its companion case, United States v. Covington, 395 U.S. 57, 89 S.Ct. 1559, 23 L.Ed.2d 94 (1969), decided the same day, the court held that a timely assertion of the privilege against self-incrimination is a complete defense to the prosecution for a violation of Title 26 U.S.C. section 4744(a) as a transferee of marihuana without having paid the transfer tax in violation of Title 26 U. S.C. section 4741.

In neither Leary nor Covington was there an occasion for the court to decide the question of retroactivity—a question of paramount importance here—although both cases stressed the importance of the timeliness of the assertion of the privilege against self-incrimination. In Leary, the defendant did not raise the defense at trial but raised it in his motion for a new trial. The court found that it was a timely and proper assertion of the privilege and served as a complete defense to Leary's prosecution under section 4744(a) (2) of Title 26 U.S.C.

Since Leary and Covington the decisions of the circuits which have wrestled with the problems of retroactivity and timeliness have been somewhat less than uniform. The Fourth Circuit has not yet been called upon to decide the question. It did, however, in United States v. Miller, 406 F.2d 1100 (4th Cir. 1969), conclude that Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968), which had held that a properly pleaded claim of the privilege against self-incrimination barred prosecution for the possession of unregistered firearms under Title 26 U.S.C. sections 5841 and 5851, was retroactive.

It is apparent that Haynes and Leary bear a strong analogy to each other. In Miller, the defendant entered a guilty plea to violations of the National Firearms Act, Title 26 U.S.C. section 5814(a) and section 5841, proscribing the transfer or possession of certain firearms unless the appropriate forms had been completed and filed with the Government. He was sentenced on December 4, 1967, and did not prosecute an appeal. The following month, January 29, 1968, Haynes v. United States, supra, was decided. Miller promptly filed a motion for leave to withdraw his guilty plea pursuant to Rule 32(d) and Rule 35 of the Federal Rules of Criminal Procedure. The District Court denied the motion and an appeal was filed. On appeal to the Fourth Circuit, Judge Simon E. Sobeloff, in a very scholarly opinion, determined that since a lawful conviction of Miller on retrial would be a "virtual impossibility"; since a retroactive application of Haynes would have no effect at all on state law enforcement; since prosecutions under the National Firearms Act involved only a limited number of convictions; and since the Haynes decision was not unanticipated by the Government, justice could only be served by giving Haynes retroactive application. The court also held that Miller's failure to have raised the defense before his conviction became final did not constitute a waiver of the privilege.

United States v. Miller, supra, has directly served as persuasive authority for two of the circuits that have determined that Leary and Covington should be

given retroactive application. United States v. Liguori, 430 F.2d 842 (2d Cir. 1970); Santos v. United States, 426 F.2d 244 (7th Cir. 1970). The Ninth Circuit has held *Leary* and *Covington* to be retroactive in United States v. Ingman, 426 F.2d 973 (9th Cir. 1970), relying on their decision in Meadows v. United States, 420 F.2d 795 (9th Cir. 1969), which, persuaded by United States v. Miller, *supra,* had held that *Haynes* should be applied retroactively. The Eighth Circuit in Taylor v. United States, 423 F.2d 1289 (8th Cir. 1970), and the United States Court of Appeals for the District of Columbia Circuit in Otey v. United States, 135 U.S.App.D.C. 142, 417 F.2d 559 (1969), have also held that *Leary* and *Covington* are retroactive.

In United States v. Scardino, 414 F.2d 925 (5th Cir. 1969), the Fifth Circuit said, in dictum, that *Leary* should be given prospective application only. However, in a later case, United States v. Lucia, 423 F.2d 697 (5th Cir. 1970), the Fifth Circuit determined that Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968)—cases predating *Haynes* and *Leary* and upon which rationale they were predicated, but concerning the Fifth Amendment privilege as it applied to the federal wagering tax statute—should be applied retroactively.

The Sixth Circuit alone has flatly held that *Leary* and *Covington* should not be accorded retroactive application. Houser v. United States, 426 F.2d 817 (6th Cir. 1970); Ramsuer v. United States, 425 F.2d 413 (6th Cir. 1970); Decker v. United States, 423 F.2d 726 (6th Cir. 1970). These cases were based on Graham v. United States, 407 F.2d 1313 (6th Cir. 1969) which held that *Marchetti* and *Grosso* were to apply prospectively only.

The Tenth Circuit has taken an entirely different approach to the retroactivity question in the four cases that have come before it. Grisham v. United States, 427 F.2d 157 (10th Cir. 1970); Martinez v. United States, 423 F.2d 479 (10th Cir. 1970); Sepulveda v. United States, 415 F.2d 321 (10th Cir. 1969); Eby v. United States, 415 F.2d 319 (10th Cir. 1969). It has found the question to be the timeliness of the assertion of the privilege—not retroactivity. Under the Tenth Circuit cases, if the privilege against self-incrimination is not raised at trial level, it has not, under *Leary* and *Covington,* been timely raised and it must fail.

The Circuit Courts of Appeals which have dealt with the question of the retroactivity of *Leary* and *Covington* have not, however, had the benefit of two very recent decisions of the Supreme Court in Mackey v. United States, 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971), and United States v. U. S. Coin and Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971). In Mackey v. United States, *supra,* the defendant had been convicted of income tax evasion in 1964. At his trial the Government had introduced into evidence sixty wagering tax returns that Mackey had previously filed pursuant to Title 26 U.S.C. section 4401. In 1968, Marchetti v. United States, *supra,* and Grosso v. United States, *supra,* were decided extending the self-incrimination privilege of the Fifth Amendment to prosecutions under Title 26 U.S.C. section 4401 et seq.—the federal wagering tax statute. Defendant promptly filed a collateral attack on his judgment of conviction based on the ground that the self-incrimination provision of the Fifth Amendment barred the Government's use of the wagering tax returns at his trial. The District Court denied relief and the Court of Appeals for the Seventh Circuit affirmed that denial, Mackey v. United States, 411 F.2d 504 (7th Cir. 1969). The Supreme Court affirmed the Seventh Circuit holding that *Marchetti* and *Grosso* were not to be applied retroactively to Mackey because there was no danger that the evidence relied on for his conviction, un-

der the then-applicable constitutional standard, was lacking in probative value.

Guided by our decisions dealing with the retroactivity of new constitutional interpretations of the broad language of the Bill of Rights, we agree with the Court of Appeals that *Marchetti* and *Grosso* should not have any retroactive effect on Mackey's conviction. Petitioner was convicted in strict accordance with then-applicable constitutional norms. Mackey would have a significant claim only if *Marchetti* and *Grosso* must be given full retroactive sweep. But in overruling *Kahringer* [United States v. Kahringer, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754 (1953)] and *Lewis* [Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475 (1955)] the Court's purpose was to provide for a broader implementation of the Fifth Amendment privilege—a privilege that does not include at its core a concern for improving the reliability of the results reached at criminal trials. There is no indication in *Marchetti* or *Grosso* that one of the considerations which moved the Court to hold that the Congress could not constitutionally compel citizens to register as gamblers and file related tax returns was the probable unreliability of such statements once given. Petitioner has not advanced any objective considerations suggesting such unreliability. The wagering tax returns introduced in evidence at his trial have none of the characteristics, and hence none of the potential unreliability, of coerced confessions produced by "overt and obvious coercion." *Johnson* [Johnson v. New Jersey], *supra*, 384 U.S., [719] at 730 [86 S.Ct. 1772, at 1779, 16 L.Ed.2d 882]. Nor does Mackey suggest that his returns—made under oath—were inaccurate in any respect. Thus, a gambling excise tax return, like physical evidence seized in violation of a new interpretation of the Fourth Amendment, is concededly relevant and probative even though obtained by the Government through means

since defined by this Court as constitutionally objectionable. As in *Desist* [Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969)], *Elkanich* [Elkanich v. United States] and *Williams* [Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (April 5, 1971)] the result here should be that a pre-*Marchetti* trial in which the Government employed such evidence is not set aside through retroactive application of the new constitutional principle.

"The short of the matter is that *Marchetti* and *Grosso* raise not the slightest doubt about the accuracy of the verdict of guilt returned here. Under these circumstances, the principles represented by *Elkanich* and *Williams*, as well as by *Tehan* [Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966)] and *Johnson*, must control. For *Tehan* and *Johnson* indicate that even though decisions reinterpreting the Fifth Amendment may create marginal doubts as to the accuracy of the results of past trials, the purposes of those decisions are adequately served by prospective application. Accordingly, the judgment of the Court of Appeals is affirmed." 401 U.S. at 674, 91 S.Ct. at 1164 (footnote omitted).

In United States v. U. S. Coin and Currency, *supra*, Donald Angelini had been convicted for failing to register as a gambler and failing to pay the related federal wagering tax under Title 26 U.S.C. sections 4411, 4412, and 4901. The Government then instituted a forfeiture proceeding under Title 26 U.S.C. section 7302 to obtain the $8,674.00 which Angelini had in his possession when arrested. The District Court ordered the forfeiture and the Court of Appeals for the Seventh Circuit affirmed. However, on remand by the Supreme Court to the Seventh Circuit after *Marchetti* and *Grosso* had been decided, a unanimous panel held that the forfeiture was bad and reversed the District Court.

* * * As a practical matter, *Marchetti* means that such violations are no longer punishable directly. It follows that they should not be punished indirectly through forfeiture. 393 F.2d 499, 500 (7th Cir. 1968).

The Supreme Court affirmed holding that *Marchetti* and *Grosso* are to be applied retroactively in a forfeiture proceeding under Title 26 U.S.C. section 7302.

* * * Unlike some of our earlier retroactivity decisions, we are not here concerned with the implementation of a procedural rule which does not undermine the basic accuracy of the factfinding process at trial. Linkletter v. Walker, 381 U.S. 618 [85 S.Ct. 1731, 14 L.Ed.2d 601] (1965); Tehan v. Shott, 382 U.S. 406 [86 S.Ct. 459, 15 L.Ed.2d 453] (1966); Johnson v. New Jersey, 384 U.S. 719 [86 S.Ct. 1772, 16 L.Ed.2d 882] (1966); Stovall v. Denno, 388 U.S. 293 [87 S.Ct. 1967, 18 L.Ed.2d 1199] (1967). Rather *Marchetti* and *Grosso* dealt with the kind of conduct that cannot constitutionally be punished in the first instance. These cases held that gamblers in Angelini's position had the Fifth Amendment right to remain silent in the face of the statute's command that they submit reports which could incriminate them. In the absence of a waiver of that right, such persons could not properly be prosecuted at all.

Given the aim of the *Marchetti-Grosso* rule, it seems clear that the Government must be required to undergo the relatively insignificant inconvenience involved in defending any lawsuits that may be anticipated. Indeed, this conclusion follows *a fortiori* from those decisions mandating the retroactive application of those new rules which substantially improve the accuracy of the factfinding process at trial. In those cases, retroactivity was held required because the failure to employ such rules at trial meant there was a significant chance that innocent men had been wrongfully punished in the past. In the case before us, however, even the use of impeccable factfinding procedures could not legitimate a verdict decreeing forfeiture, for we have held that the conduct being penalized is constitutionally immune from punishment. No circumstances call more for the invocation of a rule of complete retroactivity. 401 U.S. at ——, 91 S.Ct. at 1045–1046 (footnotes omitted).

■ This court finds that the Supreme Court decision in United States v. U. S. Coin and Currency, *supra*, is controlling in the instant case. Unlike *Mackey*, the question here is not the reliability of the fact-finding process involved in Houssein's conviction—but, as in Angelini's case in United States v. U. S. Coin and Currency, *supra*, whether Houssein could have been convicted at all had he raised his Fifth Amendment privilege. It is apparent from a reading of United States v. U. S. Coin and Currency, *supra*, that he should not have been. *Leary* then, under the facts of the instant case, is to be accorded retroactive application.

■ The Government contends that Houssein's guilty plea served as an effective waiver to the privilege. That contention could have merit only if Houssein were aware of his right to assert the privilege at the time the plea was entered. He was not so aware—indeed, he could not have been. Therefore, it was not an effective waiver of a known right. (And see United States v. Miller, *supra*, 406 F.2d at 1105).

For the reasons stated, this court grants defendant's motion to withdraw his guilty plea in accordance with Rule 32(d) and reverses his judgment of conviction.